UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| VS. ) | SA-15-CR-433-XR |
| ) | |
| JOSE SOCORRO GONZALEZ-VERA ) | |

**ORDER**

On this day came on to be considered Defendant's motion to dismiss (docket no. 26).

**Background**

On March 19, 1988, Defendant adjusted his status to temporary resident. His A-file at that time was A91370900. On May 15, 1989, he completed an application to adjust status from temporary to permanent resident. The application was granted and he was issued a resident alien card (under A091370900).

On or about February 8, 1996, Defendant aided and abetted the transportation of aliens to enter the United States at a time and location other than designated by immigration officers. He pled guilty to the offense and was sentenced to five years of probation. *See* DR-96-0276M-01. On February 9, 1996, an Order to Show Cause was personally served upon him to determine why he should not be deported from the United States because of the charge set forth above and because he failed to enter the United States at a proper location. A new A-file number (A 74-372-896) was assigned to his name on July 23, 1996. At a detention hearing held on July 23, the Defendant allegedly told immigration officials he was an LPR (Lawful Permanent Resident) with an A-file number of 91-370-900. It is uncertain why the Defendant was issued a new A-file

1

number on this date. A different A-file number could have been assigned to him because the Defendant may have initially claimed he was present in the United States illegally. On July 26, 1996, he was given an immigration bond.

On July 25, 1996, Defendant completed an application for redetermination of custody status. That application reflects file number A 74-372-896.

On April 24, 1997, a deportation proceeding was held. The Defendant was present and represented by counsel. The Immigration Judge found that the Immigration Service met its "burden of proving deportability by clear, convincing and unequivocal evidence" because the Defendant crossed into Mexico and returned into the United States at an unlawful location, without inspection, and that he assisted others to inter illegally. On April 28, 1997, the Defendant was ordered deported to Mexico and was otherwise found ineligible for relief. That order reflected file number A 74-372-896. The Defendant's Lawful Permanent Resident status was revoked at that time.

The Defendant appealed that decision, but the appeal was ultimately dismissed for failure to file the requisite briefs. On August 26, 1999, a Warrant of Removal/Deportation was signed authorizing the arrest and removal of the Defendant.

It is uncertain what transpired between August 26, 1999, and May 8, 2002. The Defendant was either in state custody for some offense or he absconded while on bond.

On May 8, 2002, the Defendant presented himself for inspection at the Eagle Pass, Texas port of entry. He presented a Form I-551 Permanent Resident Card, file no. A74 372 896. At that time immigration officials discovered the August 1999 Warrant of Removal. The

immigration officials also discovered that the Defendant had another A-file (A91 370 900). The Defendant was not admitted into the United States, was placed into custody, and was removed to Mexico on May 20, 2002. Immigration officials administratively consolidated the two different A files on May 29, 2002. Sometime after May 20, 2002, the Defendant re-entered the United States.

On May 3, 2010, the Defendant completed a Form I-90, Application to Replace Permanent Residence Card stating that his card was lost, stolen, or destroyed. On that application he provided a residential address in San Antonio, Texas. The request was denied on September 28, 2010. The Defendant also received a written decision denying his Form I-90 application (referencing file no. A74372896) on or about November 1, 2010. The Decision stated he was ordered deported on April 28, 1997; there was no record that he regained lawful permanent resident status, and he was ineligible to receive a replacement card.

Despite being aware of his possible residence or mailing address in May 2010, the Defendant was not arrested by immigration authorities until May 26, 2015. An indictment was filed charging the Defendant with illegal reentry on June 17, 2015.

### Defendant's motion to dismiss

Defendant first argues that the deportation decision in 1997 was unlawful because that decision only addressed A-file number A 74-372-896, and that he maintained status under A-file number A 91-370-900.

Alternatively, Defendant argues that he was "found in" the United States on May 3, 2010, when he completed the Form I-90, in excess of the five-year limitations period. The indictment in this case was filed on June 17, 2015.

## Analysis

### Due Process challenge to the removal

The Court understands the Defendant's first argument is that he was deprived of due process because the Notice to Appear and subsequent documents, including the warrant of removal only referenced one of his A files, not both. 8 U.S.C. § 1229[1] specifies what items must be provided to an alien. A-file numbers are not included in this section. Other than this technical error, the Defendant was afforded all due process required under the immigration statute.

### Found In & Limitations

8 U.S.C. § 1326 provides in relevant part, as follows:

> any alien who—
>
> (1) has been denied admission, excluded, deported, or removed ...,
> and thereafter

---

[1] In removal proceedings under section 1229a of this title, written notice (in this section referred to as a "notice to appear") shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any) specifying the following:
(A) The nature of the proceedings against the alien.
(B) The legal authority under which the proceedings are conducted.
(C) The acts or conduct alleged to be in violation of law.
(D) The charges against the alien and the statutory provisions alleged to have been violated.
(E) The alien may be represented by counsel and the alien will be provided (i) a period of time to secure counsel under subsection (b)(1) of this section and (ii) a current list of counsel prepared under subsection (b)(2) of this section.

> (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States ..., the Attorney General has expressly consented to such alien's reapplying for admission; ...
>
> shall be fined under Title 18, or imprisoned not more than 2 years, or both.

The Ninth Circuit, while discussing a venue challenge in a Section 1326 case, defined the phrase "found in" under this statute. *See U.S. v. Hernandez*, 189 F.3d 785 (9th Cir. 1999). The Ninth Circuit stated:

> [t]he plain meaning of § 1326 can easily be understood by a person of "ordinary intelligence." It prohibits a deported alien from re-entering the United States without permission.
>
> . . . .
>
> In a further refinement, we stated that the crime of being "found in" the United States continues until the INS discovers the defendant. *United States v. Guzman–Bruno*, 27 F.3d 420, 423 (9th Cir. 1994).

*Hernandez*, 189 F.3d at 789.

Other federal courts agree that a deported alien is "found in" the United States when the alien is discovered by the authorities. *See United States v. Santana–Castellano*, 74 F.3d 593, 598 (5th Cir. 1996) ("[A] 'found in' violation is a continuing violation until the date the alien is discovered by immigration authorities...."); *United States v. Rivera–Ventura*, 72 F.3d 277, 282 (2d Cir. 1995) ("[T]he offense of being 'found in' the United States in violation of § 1326(a) is not complete until the authorities both discover the illegal alien in the United States, and know, or with the exercise of diligence typical of law enforcement authorities could have discovered, the illegality of his presence.") (internal citations omitted); *United States v. Gomez*, 38 F.3d 1031, 1035 (8th Cir. 1994) ("[A] 'found in' violation is a continuing violation that is not complete until the alien is 'discovered' by immigration authorities."). The Eighth Circuit recently

reiterated its holding in *Gomez* that "the crime of reentry under § 1326 is an ongoing offense that continues until an individual is discovered by authorities. . . When an individual is 'found in' the United States, the date he or she is found is generally considered to be the date he or she violated § 1326." *United States v. Estrada–Quijas*, 183 F.3d 758, 761–62 (8th Cir. 1999) (internal citations omitted).

In this case the Government alleges that the Defendant re-entered the United States sometime after May 2002, and was not "found" by immigration agents until May 26, 2015. The Court agrees. Although the Defendant submitted paperwork in 2010 to immigration authorities listing a Texas mailing address or residence, this does not constitute being "found" as contemplated by the statute and the cases interpreting the statute.

## Conclusion

Defendant's motion to dismiss (docket no. 26) is denied.

It is so ORDERED.

SIGNED this 13th day of October, 2015.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE